MUTUAL SAVINGS AND LOAN ASSOCIATION v. EDWIN S. LANIER, COMMISSIONER OF INSURANCE OF THE STATE OF NORTH CAROLINA

No. 72

(Filed 30 July 1971)

Taxation § 29— savings and loan association — excise tax — deductions — reserve for losses on loans

For the purpose of determining its North Carolina savings and loan excise tax, a savings and loan association may deduct from its gross income a "reserve for losses on loans." G.S. 105-228.24; 26 U.S.C.A. § 593.

APPEAL by plaintiff from Clark, J., July 1970 Regular Civil Session of WAKE Superior Court, transferred for initial appellate review by the Supreme Court under General Order of July 31, 1970, entered pursuant to G.S. 7A-31(b)(4).

Civil action to recover for overpayments under protest of excise taxes for plaintiff's income years ending December 31, 1967, and December 31, 1968.

Plaintiff is a savings and loan association organized under G.S. Ch. 54, Subch. I, Art. 1. Its principal office is in Rockingham County, North Carolina. (Note: The terms "building and loan association" and "savings and loan association" are "interchangeable." G.S. 54-1.)

Plaintiff's excise tax returns for the indicated income years were filed within the prescribed times. G.S. 105-228.24; G.S. 105-228.26. It has complied with all necessary administrative procedures preliminary to the institution of this action.

Exclusive of interest, the amounts involved are $3,168.60 for 1967 and $3,412.80 for 1968.

Upon stipulated facts, the parties present this question: "For the purpose of determining its North Carolina savings and loan excise tax, may a savings and loan association deduct from its gross income a 'reserve for losses on loans'?"

The court below answered, "No," and entered judgment that plaintiff take nothing by its action and that the action be dismissed at the cost of the plaintiff.

Plaintiff excepted and appealed.

*Manning, Fulton & Skinner, by Howard E. Manning and W. Gerald Thornton, for plaintiff appellant.*

*Attorney General Morgan and Assistant Attorney General Banks for defendant appellee.*

BOBBITT, Chief Justice.

Chapter 1110, Session Laws of 1967, referred to hereafter as the 1967 Act, is effective and applicable to all taxable years beginning on or after January 1, 1967. Its provisions, discussed below, determine plaintiff's tax liability for 1967 and 1968.

Prior to the 1967 Act, building and loan and savings and loan associations organized under the laws of this State were taxed as provided in G.S. Ch. 105, Subch. I, Art. 8D, Vol. 2D, 1965 Replacement.

G.S. 105-228.23 imposed upon every building and loan association for the privilege of conducting business in this State a tax of six cents on each one hundred dollars of the liability of such association on its shares outstanding on December 31 of

the preceding year. In addition, G.S. 105-228.24 provided that every building and loan association pay annually "an excise tax equivalent to six per cent (6%) of the net taxable income, as herein defined, of *such* corporation during the income year." (Our italics.) Under G.S. 105-138(a)(2), building (savings) and loan associations "subject to taxation for capital stock tax and/or excise tax purposes under article 8D" were exempt from the income tax imposed by G.S. Ch. 105 Subch. I, Art. 4.

The 1967 Act is entitled "AN ACT TO MAKE TECHNICAL RE-VISIONS TO CHAPTERS 105, 119, 18 AND 53A OF THE GENERAL STATUTES PERTAINING TO THE REVENUE LAWS OF NORTH CARO-LINA." Prior thereto, G.S. Ch. 105, Subch. I, Art. 4, entitled "Schedule D. Income Tax," included all statutory provisions re-lating to North Carolina income taxes. The 1967 Act divided Art. 4, "Schedule D. Income Tax," into "Division I. Corporation Income Tax," "Division II. Individual Income Tax," and "Divi-sion III. Income Tax—Estates, Trusts, and Beneficiaries." G.S. 105-130 provides that Division I, the pertinent portion of the 1967 Act, "shall be known and may be cited as the Corporation Income Tax Act." Division I consists of G.S. 105-130 through G.S. 105-130.21. G.S. 105-130.11(2) provides that "building and loan associations and savings and loan associations subject to capital stock tax and/or excise tax under article 8D" are exempt from the income tax imposed by the (1967) Corporation Income Tax Act.

Although such associations are not subject to income tax *eo nomine,* the amount of the annual excise tax imposed by G.S. 105-228.24 before and after the 1967 Act was "equivalent to six per cent (6%) of the net taxable income, as herein defined, of *such* corporation during the income year." (Our italics.) Too, before and after the 1967 Act, G.S. 105-228.24 provided: "For purposes of this article 'net taxable income' shall mean net income as the same is defined for purposes of the income tax levied against corporations as provided in article 4 of sub-chapter I of chapter 105 of the General Statutes less all divi-dends paid or accrued by an association during the income year on all of its outstanding shares of capital stock."

(Note: Effective July 1, 1969, Session Laws of 1969, Chapter 1075, Section 7, amended G.S. 105-228.23 by substitut-ing "seven and one-half cents (7½¢)" for "six cents (6¢)"

and amended G.S. 105-228.24 by substituting "seven and one-half per cent (7½%)" for "six per cent (6%).")

Prior to the 1967 Act, "Schedule D. Income Tax," G.S. Ch. 105, Subch. I, Art. 4, prescribed the procedure for determining the "net taxable income" of a corporation. The 1967 Act (G.S. 105-130.3) provided: "Every corporation doing business in this State shall pay annually an income tax equivalent to six per cent (6%) of its net income or the portion thereof allocated and apportioned to this State. The net income or net loss of such corporation shall be the same as 'taxable income' as defined in the Internal Revenue Code in effect on the effective date of this division, subject to the adjustments provided in G.S. 105-130.5." By virtue of G.S. 105-130.3, the excise tax prescribed by G.S. 105-228.24 is imposed on the amount of "taxable income" as determined in the Internal Revenue Code subject to such adjustments, if any, as may be required by G.S. 105-130.5.

In computing the net income of *a taxpayer* prior to the 1967 Act, G.S. 105-147(10) authorized the following deductions: "(10) Debts ascertained to be worthless and actually charged off within the income year, if connected with business and, if the amount has previously been included in gross income in a return under this article; *or,* in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts." (Our italics.) (Note: Although authorized to do so, the Commissioner had never exercised his discretion to permit a reserve for bad debts as a deduction in lieu of debts ascertained to be worthless and actually charged off within the income year.) Under the 1967 Act, G.S. 105-147(10) provides in identical terms for a deduction for worthless debts in the computation of the net income of an individual under "Division II. Individual Income Tax" of G.S. Ch. 105, Subch. I, Art. 4. However, the 1967 Act did not include that provision or any provision for a deduction for worthless debts in computing the net income of a corporation under "Division I. Corporation Income Tax." Since the 1967 Act (G.S. 105-130.3) provided that "(t)he net income or net loss of such corporation shall be the same as 'taxable income' as defined in the Internal Revenue Code in effect on the effective date of this division, subject to the adjustments provided in G.S. 105-130.5," we look to the provisions of the Internal Revenue Code in effect on January 1, 1967.

It is here noted that building and loan associations are not exempt from the corporate income tax imposed by the Internal Revenue Code. 26 U.S.C.A. § 11.

Under the Internal Revenue Code, "taxable income" means gross income minus specified allowable deductions. 26 U.S.C.A. § 63. Itemized deductions allowable to taxpayers, corporate or individual, for "Bad debts" are set forth in detail. 26 U.S.C.A. § 166, subsections (a) through (h). Subsections (a), (c) and (h)(3) are quoted below.

"(a) General rule.—

(1) Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) Partially worthless debts.—When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

"(c) Reserve for bad debts.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

"(h) Cross references.—

(1) . . . .

(2) . . . .

(3) For special rule for bad debt reserves of certain mutual savings banks, domestic building and loan associations, and cooperative banks, see section 593."

26 U.S.C.A. § 593, entitled "Reserves for losses on loans," applies specifically to domestic building and loan associations and to certain mutual savings banks and cooperative banks. Subsection (b) thereof provides in detail the formula for "Addition to reserves for bad debts" of a domestic building and loan association. The setting forth of this formula in full would add nothing to the clarity of this opinion. Subsection (b) is composed of sub-subsections (1), (2), (3), (4), and (5). Subsection (b)(1) begins as follows: "In general.—For purposes of section

Savings and Loan Assoc. v. Lanier, Comr. of Insurance

166(c) the reasonable addition for the taxable year to the reserve for bad debts of any taxpayer described in subsection (a) shall be an amount equal to the sum of— .... "

For *federal* income tax purposes, defendant concedes plaintiff was entitled to deduct the reserve for losses on loans specified in 26 U.S.C.A. § 593, referred to in the briefs as sixty per cent of plaintiff's "net income." However, defendant contends this deduction does not apply in determining the base for the excise tax imposed on plaintiff by G.S. 105-228.24.

Defendant calls attention to the report to the Governor and the 1967 General Assembly of the Tax Study Commission created by Resolution 79 of the General Assembly of 1965 for the study of North Carolina's revenue structure.

In his brief, defendant quotes the following from Page 82 of the Commission's report: "The Commissioner of Revenue by invitation submitted a number of proposals for amendments to the Revenue Laws to the Commission for its consideration. These proposals were designated as 'technical' amendments as THEY WERE NOT PROPOSED TO PROVIDE ADDITIONAL REVENUE OR TO PROVIDE TAX RELIEF TO ANY GROUP or groups." (Defendant's capitalization.) In our view, the immediately following sentence in the same paragraph should be given at least equal emphasis. It reads: "There might be some resulting effect upon revenue from various changes, but, on the whole, these amendments are *to make the Revenue Laws conform more closely to the Federal law, to clarify* provisions which are ambiguous or where problems have arisen in administering the law, to eliminate inequities, *to simplify the law,* to provide law in places where it is now lacking, to eliminate conflicts in the law, and to provide a more equitable allocation and apportionment formula." (Our italics.)

In his brief, defendant also quotes the following from Pages 82-83 of the Commission's report: "Two of the most important 'technical' amendments are A SEPARATION OF THE CORPORATION INCOME TAX LAW from the individual income tax law and the proposed new allocation law. Under the present law, the corporation income tax and the individual income tax are combined in one article and the proposed rewrite shortens and simplifies the income tax law dealing with corporations through the elimination of those provisions pertaining only to individuals.

*The rewrite also provides for a closer conformity between North Carolina law and Federal law* as THE TOTAL NET INCOME OF THE CORPORATION WILL BE COMPUTED WITH REFERENCE TO THE FEDERAL CODE." (Defendant's capitalization.) (Our italics.)

Clearly, the Commission considered conformity between North Carolina law and federal law a major objective in the effort to achieve the desired clarity and simplification.

Defendant contends the only deductions allowable to plaintiff for worthless debts are those formerly allowed under G.S. 105-147(10) to *all* taxpayers prior to the 1967 Act. However, as indicated above, the portion of the 1967 Act *applicable to corporation income taxes* does not contain this or any provision of similar import. Thus, whatever rights plaintiff may have with reference to bad debts in determining plaintiff's "taxable income" under the Internal Revenue Code as a base for the excise tax imposed by G.S. 105-228.24 are presently defined in the Internal Revenue Code rather than in any provision of a North Carolina statute. The question is whether 26 U.S.C.A. § 166 or 26 U.S.C.A. § 593 applies in determining plaintiff's excise taxes for 1967 and 1968 under G.S. 105-228.24.

The provisions of 26 U.S.C.A. § 166 are in accord with those of G.S. 105-147(10) prior to the 1967 Act with this exception: G.S. 105-147(10) authorized a reasonable addition to a reserve for bad debts "in the discretion of the Commissioner." 26 U.S.C.A. § 166(c) authorizes a reasonable addition to a reserve for bad debts "in the discretion of the Secretary or his delegate." Reliance upon the exercise of this discretionary power by a federal rather than a State official indicates the legislative intent to achieve simplicity and conformity when computing "taxable income" for State and federal tax purposes.

For present purposes, the inescapable fact is that 26 U.S.C.A. § 166 expressly provides in Subsection (h)(3) that a different (special) rule applies to domestic building and loan associations, namely, the rule prescribed in 26 U.S.C.A. § 593. These federal statutes were in effect when the 1967 Act was adopted and presumably the General Assembly was advertent to their provisions. Admittedly, 26 U.S.C.A. § 593 applies when computing the "taxable income" of a domestic building and loan association for federal tax purposes. To apply a different rule in computing "taxable income" of such association for State

excise tax purposes based on "taxable income" would negate rather than promote the conformity recommended in the Commission's report.

G.S. 105-228.24 provided that every building and loan association shall pay annually "an excise tax equivalent to six per cent (6%) of the net taxable income, as herein defined, of *such corporation* during the income year." (Our italics.)

Defendant contends statutes providing exemption from taxation are to be strictly construed, citing *inter alia Sale v. Johnson, Commssioner of Revenue*, 258 N.C. 749, 129 S.E. 2d 465 (1963) ; also, that the burden is on the taxpayer claiming an exemption to show that he falls within the statutory provisions permitting such exemption, citing *inter alia Henderson v. Gill*, 229 N.C. 313, 49 S.E. 2d 754 (1948). However, these rules of statutory construction must be considered in the light of the well-established rule expressed in *Davis v. Granite Corporation*, 259 N.C. 672, 675, 131 S.E. 2d 335, 337 (1963), as follows: "When the language of a statute is plain and free from ambiguity, expressing a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended, and the statute must be interpreted accordingly." In our view, the statutory language impels the conclusion that the General Assembly intended that "taxable income" as a base for the excise tax imposed by G.S. 105-228.24 should be the same as the "taxable income" of *a building and loan association* (as distinguished from corporations generally) under Internal Revenue Code, subject to adjustments, if any, under G.S. 105-130.5. (Note: No questions are presented as to adjustments under G.S. 105-130.5.)

We hold that the base for the excise tax imposed on plaintiff for 1967 and 1968 by G.S. 105-228.24 is the "taxable income" of a domestic building and loan association under the Internal Revenue Code; and that, in the determination of such "taxable income," the provisions of 26 U.S.C.A. § 593 applied. Since no questions are presented with reference to the accuracy of plaintiff's calculations, the judgment of the court below is vacated and the cause is remanded for the entry of a judgment not inconsistent with this opinion.

Error and remanded.